IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RYAN BARNES #21343, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:22-cv-00927 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| CHIEF HENDERSON, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Plaintiff Ryan Barnes, an inmate at the Rutherford County Adult Detention Center in Murfreesboro, Tennessee, filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1), an application to proceed as a pauper (Doc. No. 2), and a motion to amend. (Doc. No. 4.) This case is before the Court for initial review. As explained below, this case may proceed for further development, and Plaintiff should consult the accompanying Order for further instructions.

**I.      Application to Proceed as a Pauper**

An inmate may bring a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Plaintiff's application is accompanied by a certified copy of his inmate trust account statement, as required by statute. (Doc. No. 2 at 3–4); 28 U.S.C. § 1915(a)(2). This application reflects that Plaintiff does not have sufficient funds to pay the full filing fee in advance. (*See* Doc. No. 2 at 4 (showing spendable balance of $0 in Plaintiff's trust account).) Accordingly, Plaintiff's application will be granted, and he will be assessed the $350.00 filing fee. 28 U.S.C. § 1915(b).

**II.     Motion to Amend**

The Complaint lists Rutherford County and Chief Henderson as Defendants. (Doc. No. 1 at 1–2.) Plaintiff's Motion to Amend requests to add Captain Little as a Defendant and provide

additional allegations relevant to the matters alleged in the Complaint. (Doc. No. 4.) This Motion will be granted, and the Court will consider the allegations in this Motion and the Complaint together when conducting the initial review.

### III. Initial Review

The Court must review and dismiss the Complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c)(1). And because Plaintiff is representing himself, the Court must hold the pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

#### A. Allegations

This case concerns Plaintiff's request for religious reading materials at the Rutherford County Adult Detention Center ("Jail"). Liberally construing the pleadings in Plaintiff's favor, as the Court must at this stage in the case, he alleges as follows:

In September 2022, Plaintiff submitted a request for reading materials concerning the "Odinist faith" (Doc. No. 4 at 1), which is Plaintiff's "religious embrace." (Doc. No. 1 at 5.) Six days later, a corporal denied this request on behalf of Captain Little and Chief Henderson. (Doc. No. 1 at 5; Doc. No. 4 at 1.) The corporal stated that Odinist material violated Jail policy because it was "satanic" and "inconsistent with the values they impose on the inmates." (Doc. No. 1 at 5; Doc. No. 4 at 1–2.) In October 2022, Plaintiff submitted another request for Odinist reading material, and a sergeant denied it, "echoing Captain Little's denial." (Doc. No. 4 at 2.)

Both denials are attributable to Rutherford County's policy of censoring religious material at the Jail that is deemed "inconsistent with the core values of Christianity." (*Id.*) Plaintiff also maintains that the Odinist faith is not "satanic." (*Id.* at 3.) Finally, he alleges that Rutherford

County endorses Christianity by displaying a Bible "in a glass case on the lawn of the County Mayor's office." (*Id.* at 4.)

    B.    <u>Legal Standard</u>

On initial review, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

    C.    <u>Analysis</u>

"There are two elements to a § 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations omitted).

Plaintiff meets the first requirement, as all three Defendants—Rutherford County, Chief Henderson, and Captain Little—are state actors under Section 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014). The Court notes, however, that Plaintiff sues Henderson and Little in only their official capacities, and not in their personal capacities. (Doc. No. 1 at 2; Doc. No. 4 at 1.) An official-capacity claim against an individual officer "is, in all respects other than name, to be treated as a suit against the entity" that the officer represents. *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009) (quoting *Kentucky*

*v. Graham*, 473 U.S. 159, 166 (1985)). As Jail officials, Henderson and Little represent Rutherford County, which is already named as a Defendant. Therefore, it would serve no purpose for Plaintiff to maintain official-capacity claims against Henderson and Little. In these circumstances, the Court will dismiss the redundant official-capacity claims, leaving Rutherford County to answer as the real Defendant in interest. *See J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 723 n.4 (6th Cir. 2020) ("The district court correctly dismissed these official capacity claims as superfluous of the claim against the county.").

As to the second requirement for a Section 1983 claim, *i.e.*, a deprivation of rights secured by federal law, Plaintiff asserts violations of his rights under the Free Exercise and Establishment Clauses of the First Amendment, as well as the Equal Protection and Due Process Clauses of the Fourteenth Amendment.[1] (Doc. No. 1 at 5; Doc. No. 4 at 2.) And to state a claim against a municipality (in this case, Rutherford County), Plaintiff must plausibly allege that one or more of these constitutional deprivations was caused by a policy or custom of the municipality. *See Hardrick v. City of Detroit, Michigan*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell*, 436 U.S. at 690–92).

1. *Free Exercise Clause*

The Free Exercise Clause "provides that 'Congress shall make no law . . . prohibiting the free exercise [of religion].'" *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (quoting U.S. Const. amend. I). "In any free exercise claim, the first question is whether 'the belief or practice

---

[1] The First Amendment "applies to the States under the Due Process Clause of the Fourteenth Amendment." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996) (collecting cases). And the Fourteenth Amendment applies to the States under its own terms. *See* U.S. Const. amend. XIV, § 1. It is unclear whether Plaintiff's reference to the Due Process Clause of the Fourteenth Amendment is an assertion of a separate due process claim unrelated to the First Amendment, or a recognition of the fact that the First Amendment is applicable to the states because it is deemed incorporated into the Fourteenth Amendment's Due Process Clause. In an abundance of caution, the Court considers whether Plaintiff has stated a stand-alone claim under the Due Process Clause below.

asserted is religious in the [plaintiff's] own scheme of things' and is 'sincerely held.'" *Id.* (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)). If a prisoner makes this showing, then the Court applies the *Turner v. Safley* standard to a regulation that burdens the prisoner's religious belief or practice to determine whether the regulation "is reasonably related to legitimate penological interests." *Id.* (applying the standard established in *Turner v. Safley*, 482 U.S. 78, 89 (1987)) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).[2]

Plaintiff's allegations, accepted as true, state a Free Exercise claim. He alleges that he requested Odinist reading materials on two occasions, and that these materials concern his "religious embrace." Although this does not amount to an unequivocal allegation that Odinist beliefs are "religious in [Plaintiff's] own scheme of themes," or that Plaintiff sincerely holds Odinist beliefs, it is reasonable to infer as much when liberally reading the allegations in Plaintiff favor, as the Court must at this stage. Plaintiff further alleges that his requests were denied based on Rutherford County's policy of banning religious material at the Jail deemed "inconsistent with the core values of Christianity." That is sufficient to state a Free Exercise claim against the County. *Maye*, 915 F.3d at 1084 ("Denying an individual a 'reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts' based on his religion of choice is not a valid penological reason—rather, the Supreme Court has held it is a flagrantly unconstitutional motivation that amounts to 'palpable

---

[2] Under *Turner*, if there is no valid connection between the burdening regulation and penological interest, "the inquiry ends, and the prisoner prevails." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 461 (6th Cir. 2019) (citations omitted). "But if a regulation serves a penological interest, [the Court] balance[s] (1) whether the prisoner possesses alternative avenues for exercising his religion; (2) whether accommodating the prisoner would affect 'guards and other inmates' or 'the allocation of prison resources generally'; and (3) whether 'obvious, easy alternatives' exist that suggest 'the regulation is not reasonable.'" *Id.* (quoting *Turner*, 482 U.S. at 89–91). A prisoner's free exercise claim may survive initial review without a full *Turner* analysis. *See Arauz v. Bell*, 307 F. App'x 923, 928–29 (6th Cir. 2009) (holding that prisoner's free exercise claim survived initial review where there was insufficient information to conduct a full *Turner* analysis due to the lack of responsive pleadings).

discrimination' in violation of the First Amendment.") (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)).

2. *Establishment Clause*

The Establishment Clause "prohibits the enactment of any law 'respecting an establishment of religion.'" *Maye*, 915 F.3d at 1084 (quoting U.S. Const. amend. I). It commands "that one religious denomination cannot be officially preferred over another." *Id.* (quoting *Larson v. Valente*, 456 U.S. 228, 244 (1982)). "An official who 'confers [a] privileged status on any particular religious sect' or 'singles out [a] bona fide faith for disadvantageous treatment' violates the Establishment Clause." *Id.* (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 724 (2005)).

Accepting Plaintiff's allegations as true, a policy of censoring materials "inconsistent with the core values of Christianity" confers a privileged status on Christianity, and Jail officials relied on this policy to deny Plaintiff's requests for reading materials on Odinism. Plaintiff does not provide any details of his beliefs or practices as it relates to Odinism, though he does describe Odinism as a "faith" (Doc. No. 4 at 1–2) and his "religious embrace." (Doc. No. 1 at 5.) Without any further context at the pleading stage, the Court construes these allegations in Plaintiff's favor to infer that his beliefs in Odinism are religious in nature so as to implicate the Establishment Clause. Accordingly, Plaintiff may proceed with an Establishment Clause claim against the County on this basis. *See Cutter*, 544 U.S. at 724 (explaining that the Establishment Clause may be violated by laws that "single out a particular religious sect for special treatment" (quoting *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 699 (1994))).

Plaintiff also alleges that Rutherford County endorses Christianity by having "a Bible on display in a glass case on the lawn of the County Mayor's office." Plaintiff, however, has not established his standing to bring a claim based on this allegation.

"[A]s the party invoking federal jurisdiction," Plaintiff has the burden of establishing standing by alleging facts demonstrating that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal citations and quotation marks omitted). For an injury in fact, Plaintiff must allege that he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). In Establishment Clause cases, "'direct and unwelcome' contact with the contested object demonstrates psychological injury in fact sufficient to confer standing." *Am. C.L. Union of Ohio Found., Inc. v. DeWeese*, 633 F.3d 424, 429 & n.1 (6th Cir. 2011) (quoting *Am. C.L. Union of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484, 489–90 (6th Cir. 2004)).

Here, Plaintiff does not allege any past, present, or anticipated direct contact with the alleged Bible on display at the County Mayor's office. Accordingly, Plaintiff has not established his standing to pursue this claim under the Establishment Clause, and it will be dismissed.

      3.    *Equal Protection Clause*

The Equal Protection Clause "provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws.'" *Maye*, 915 F.3d at 1085 (quoting U.S. Const., amend. XIV, § 1). It "embodies the principle that all persons similarly situated should be treated alike." *Id.* (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)). "[T]o establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required." *Koger v. Mohr*, 964 F.3d 532, 544 (6th Cir. 2020) (quoting *Maye*, 915 F.3d at 1085). Discriminatory intent is presumed, however, when a regulation burdens the exercise of a "fundamental right," such as the right to religious

freedom. *Maye*, 915 F.3d at 1085–86. Then, the regulation "will be sustained only if it is 'suitably tailored to serve a compelling state interest.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005) (quoting *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985)).

Here, Plaintiff does not name any specific similarly situated inmates who have been treated differently when requesting religious reading materials. But he alleges that the stated reason for denying his requests for Odinist materials was that such materials were deemed "inconsistent with the core values of Christianity." Reading this allegation in Plaintiff's favor, as required, it is plausible that Plaintiff could develop facts reflecting that he was treated differently than inmates requesting Christian reading materials. And because Plaintiff's treatment, as alleged, burdened his right to religious freedom, the Court infers a discriminatory intent. Accordingly, Plaintiff may proceed with an Equal Protection claim against the County on this basis. *See Koger*, 964 F.3d at 545 (inferring a discriminatory purpose sufficient to state an equal protection claim where a prisoner alleged that a regulation made "a facially discriminatory distinction between" religions, thus burdening the prisoner's "fundamental rights to religious freedom under the First Amendment) (quoting *Maye*, 915 F.3d at 1086).

### 4. *Due Process Clause*

"The Due Process Clause of the Fourteenth Amendment says that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Schulkers v. Kammer*, 955 F.3d 520, 539 (6th Cir. 2020) (quoting U.S. Const. amend. XIV, § 1). It contains distinct substantive and procedural components. *See id.* ("This clause ensures fair process and safeguards a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them.") (internal citations and quotation marks omitted). Plaintiff

does not specify the nature of his stand-alone Due Process claim, but whether the Court construes it as substantive or procedural, Plaintiff fails to state a claim.

Substantive due process is "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (quoting *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003)). "The Supreme Court has repeatedly held," however, "that where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing such a claim.'" *Kiser v. Kamdar*, 831 F.3d 784, 791 (6th Cir. 2016) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Here, Plaintiff does not attempt to explain how any substantive due process claim is distinct from his more definite claims brought under the Free Exercise, Establishment, and Equal Protection Clauses. Therefore, any substantive due process claim will be dismissed. *See Hardy v. Unknown Agee*, No. 14-2230, 2015 WL 13782958, at *3 (6th Cir. May 8, 2015) (affirming dismissal of substantive due process claim that was duplicative of free exercise claim); *Maye v. Klee*, No. 14-10864, 2018 WL 3259786, at *12 (E.D. Mich. Jan. 24, 2018), *report and recommendation adopted*, 2018 WL 1384234 (E.D. Mich. Mar. 19, 2018) (explaining that this principle supports dismissal of substantive due process claims that directly overlap with claims brought under the Free Exercise, Establishment, and Equal Protection Clauses).

"Procedural due process is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). But Plaintiff does not state that he intends to pursue a claim under this

theory of relief, and he provides little to no allegations regarding the procedure by which his requests for religious reading material were denied. Plaintiff, instead, focuses on the denial itself. (*See* Doc. No. 4 at 2 (premising his claims on the Jail's alleged policy of censoring certain religious material); *id.* at 4 (prospectively requesting denial of any qualified immunity defense based on his clearly established "right to freedom of religion").) Based on these allegations, it would be improper for the Court to create a procedural due process claim on behalf of Plaintiff. *See Lawhorn v. Buy Buy Baby, Inc.*, No. 3:20-cv-00201, 2021 WL 1063075, at *3 n.3 (M.D. Tenn. Mar. 19, 2021) (Richardson, J.) (refusing to go beyond the Court's "legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party") (quoting *Beaudett v. City of Hampton*, 775 F. 2d 1274, 1278 (4th Cir. 1985)). Plaintiff, therefore, fails to state a stand-alone claim under the Due Process Clause.

## IV. Conclusion

For these reasons, Chief Henderson and Captain Little will be dismissed as parties, but the Court concludes that Plaintiff has stated claims against Rutherford County under the Free Exercise, Establishment, and Equal Protection Clauses for denying his requests for religious reading material based on the County's alleged policy of banning religious material at the Jail that is deemed "inconsistent with the core values of Christianity." Plaintiff, however, lacks standing to bring an Establishment Clause claim based on the alleged display of a Bible at the County Mayor's office. Plaintiff also fails to state a stand-alone due process claim.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE